Melcher *v.* Flanders.

## MELCHER *v.* FLANDERS.

One who enters upon land under a deed with warranty, purporting to convey the fee, is presumed to enter claiming according to such title.

Such party may maintain a writ of entry, though it appear that his predecessors had an estate less than a freehold.

Under the plea of *nul disseizin* the tenant cannot defeat the demandant's writ, by showing in himself an estate for years. He can set up such defence only by plea of special non-tenure.

When a verdict is taken by consent, it is to be assumed that every thing that could have been legally found for the party in whose favor the verdict is so taken, has been so found.

The testimony of one of two subscribing witnesses to a deed of land, that he and the other subscribing witness were present and saw the execution, and subscribed their names as witnesses, is ordinarily sufficient, without the production of the other witness.

WRIT OF ENTRY in favor of Woodbury Melcher against Walter P. Flanders and others, for a tract of land in Haverhill; being the west half of lot No. 1, of the forty acre lots in the north division of said town. Plea, the general issue.

The demandant claimed, under two mortgages, each containing covenants of warranty, and purporting to convey a fee, one from John Palmer to Joseph Hardy, Jr., dated

December 11, 1854, to secure the payment of three prom-
issory notes, described in the condition of the mortgage
as being all of even date with the mortgage, signed by
Palmer, and payable to Hardy, or bearer, one for $100 in
January, then next, with interest; one for $435, on the
first of September, then next, with interest annually; and
one for $400, in one year from the first of September next,
with interest annually; the other mortgage, dated October
20, 1855, from S. H. Melcher to the demandant, to secure
the payment of a note of even date with the mortgage,
for eight hundred dollars, signed by Melcher, and payable
to the demandant, on demand. This mortgage to the
demandant purported to be witnessed by Augustus Whit-
ney and Marsh Currier. Whitney was introduced as a
witness, and testified that he subscribed as an attesting
witness, that he saw Melcher sign, and that Currier was
present when the mortgage was executed, and subscribed
his name at the same time as an attesting witness. It
appeared that Currier, at the time of the trial, was living,
and within the reach of process of the court, but he was
not produced; and it was objected that the foregoing tes-
timony was incompetent to prove the execution of the
mortgage. The objection was overruled by the court.

To prove the transfer of the Palmer mortgage from
Hardy to him, the demandant produced a writing on the
back of the mortgage, as follows: "For value received I
hereby transfer the within deed of mortgage to Woodbury
Melcher. September 20, 1856. Joseph Hardy, Jr." He
then introduced three notes of hand, corresponding in all
respects with the description in the condition of the mort-
gage, except that one of the three was written payable
to 'Joseph Hardy,' instead of 'Joseph Hardy, Jr.,' and
proved by the testimony of Hardy, that the three notes
produced were the three given by Palmer at the execution
of the mortgage, and were those referred to and intended
by the parties to the mortgage in the condition; and that

said notes were given to him as the consideration for a conveyance by him, Hardy, to Palmer, of the premises covered by the mortgage—a deed of warranty of the same date as the mortgage, conveying the premises from Hardy to Palmer being produced; that he delivered the notes and mortgage to S. H. Melcher, who paid over to him the amount due upon them at the time of assigning the mortgage, and had the business done in the name of the demandant, and therefore had the assignment made to him. It appeared that the father of the witness resided in the same town with him, and bore the same name, the witness being commonly distinguished from the father by the addition of junior to his name. It was objected that this was not competent evidence of the assignment of the mortgage and of the notes to the demandant, but the court held otherwise.

To make out title under the mortgages, the demandant relied upon a lease of the demanded premises from the town of Haverhill to John Mudgett, of which the following is a copy: " This indenture, made this 26th day of January, 1829, by and between the town of Haverhill, on the one part, and John Mudgett, of said Haverhill, on the other part, witnesseth, that the said town of Haverhill, for the consideration hereafter mentioned, hath demised, granted, and to farm let unto the said Mudgett, his heirs, executors and assigns, the forty acre lot, No. 1, in the north division in said Haverhill, with all the privileges, &c.; to have and to hold, &c., for and during the term of nine hundred and ninety-nine years, fully to be complete and ended; and said Mudgett, for himself, his heirs, executors and administrators, doth hereby covenant and agree with said town to pay and cause to be paid to said town, for the use of said premises, the yearly rent of $6, the first payment to be made on the first day of January, 1831, and so upon the first day of January in every year succeeding, until the end of said term, and to pay all taxes that may be

assessed upon the premises during the term provided. And it is covenanted and agreed between the parties, that if at any time the said yearly rent, or any part thereof, shall be in arrear, and unpaid for the space of sixty days next after the same shall become due as aforesaid, being lawfully demanded, then it shall and may be lawful for said town into the premises or any part thereof, in the name of the whole, to reënter and the same to re-possess, have and hold as their former estate, and the said Mudgett, and others, the occupiers and possessors thereof to expel and remove, any thing herein to the contrary notwithstanding. In witness whereof the parties to these presents have set their seals, and said Mudgett hath set his hand, and John Kimball, John Nelson and Caleb Morse, a committee for said town, duly authorized by vote to lease said premises, have also subscribed their hands, this day and year first above written.

TOWN OF HAVERHILL.    [*Seal.*]

JOHN NELSON,  ⎱
CALEB MORSE,   ⎭ *Committee.*
JOHN KIMBALL, ⎰

JOHN MUDGETT.           [*Seal.*]

Executed in presence of Chs. Hopkins."

The defendants, in order to show title from the town, introduced a quitclaim deed from Mudgett to Flanders, one of the defendants, dated February 21, 1857, a copy of which was annexed to the case. The evidence tended to show that nothing was paid by Flanders or any other person, to Mudgett, for this quitclaim, and that he received no consideration therefor ; that Mudgett stated at the time of giving the quitclaim that he had no title or interest in the premises ; that he had conveyed away all his right before, and that he did not pretend to have or claim any right which he had not conveyed away.

In the course of the trial, and before either party was put to the proof of title derived from the town, but after

the defendants had introduced proof of Mudgett's possession, as heretofore stated, the plaintiff introduced Mudgett, who testified that about twenty-five years ago he was in possession of the lot, and occupied for several years, and that after he had thus been in the occupation and possession for a number of years, he sold out to George W. Glines, and yielded the possession to him, and that he continued to occupy for three or four years after. The defendants, for the purpose of making out title derived from the town, then proved by said Mudgett that he had paper evidence of title from the town when he entered and while he occupied, being a lease for nine hundred ninety-nine years; that he delivered the lease to Glines when he sold out to him; that it was recorded in the registry of deeds, he, Mudgett, having it put on record, and taking it himself from the office after it was recorded; and that it had remained in his possession from that time until he sold out, and delivered it to Glines. The defendants then introduced Glines, who testified that he received the lease from Mudgett at the time of his purchase, about 1835, and delivered it to William Gannett, to whom he subsequently sold his interest at the time of the sale. Gannett testified that he had no recollection of receiving the lease from Glines; that his house was burned some twelve or fourteen years ago, with some of his papers in it, and that this might have been among them. Each of these witnesses testified that they had searched among their papers for the lease, but could not find it. The defendants then introduced the foregoing copy from the registry of deeds, which was certified by the register to be a true copy, as recorded in volume 116, page 245, and Mudgett testified that he understood and believed it to be a copy of the lease to which he referred as the paper evidence of his title from the town.

The plaintiff, for the purpose of proving title from the town, then proved by said Glines that he had the original

lease in his possession for about four years after it was delivered to him by Mudgett; that after it had been in his possession about two years, a writing was made out on the back of the lease, and signed by Mudgett, assigning the lease to him, said George W. Glines and David Glines; and that he caused the assignment to be recorded in the registry of deeds; and then introduced John McClary, who testified that he was register of deeds for 1838, and in October of that year received for record, and put on record a lease from the town to Mudgett, and an assignment upon the back of the lease from him to George W. and David Glines, and that the lease was recorded in volume 150, page 353, and the assignment on the following page. The said volume of records was produced, and on page 353 appeared recorded a lease from the town to Mudgett, corresponding in all particulars with the record in volume 116, page 245, except as follows: In the copy as recorded in volume 116, the names of the committee appear to have been signed in the following order: Nelson first, Morse second and Kimball last. In the other, Kimball first and Morse last, and in the former the word "the" is used for "this" in one place, and "of" for "on" in another; and on the following page is recorded an assignment, as follows: "Know all men by these presents that I, John Mudgett, within named, for and in consideration of $100, to me in hand before the delivery hereof, paid by George W. Glines and David Glines, of Haverhill, the receipt whereof I do hereby acknowledge, have transferred and set over, and by these presents do transfer and set over unto said George and David all my right, title, interest and claim in and unto the premises within described, and also to the within lease, to hold the same, with the appurtenances, &c., to them, their heirs, executors and assigns forever. In witness," &c., "John Mudgett," the same being sealed, dated December 19, 1837, attested by Russell Kimball and A. K. Merrill as

Melcher *v.* Flanders.

subscribing witnesses, with a certificate of acknowledgement by said Mudgett, before "John Mudgett, justice of peace," and a certificate of record, "October 23, 1838."

Russell Kimball and Abel K. Merrill were called by the plaintiff, and testified that they had no recollection of ever witnessing the execution of any paper between Glines and Mudgett, or of any such paper as the assignment; that they were in partnership in the business of traders at Haverhill Corner, in 1838, and often witnessed papers of which they retained no recollection. Mudgett testified that the assignment was made out and executed at Haverhill Corner, though at what particular place, or by whom written, he could not remember; and McClary testified that at the time he recorded the assignment he was acquainted with the hand-writing of Kimball and Merrill, and had no recollection of his attention being attracted by any thing peculiar in the signatures, and in fact no recollection or knowledge of the recording of the assignment, or of the attestation of the witnesses, apart from the fact that he found the record made by him, as above stated. The defendants objected that this evidence was insufficient to prove the execution of the assignment, but the court held it competent to be submitted to the jury for that purpose, and ruled that under said lease and assignment, in connection with the following evidence, the demandant was entitled to a verdict. The office-copy of the lease and assignment having been introduced, the plaintiff produced office-copies of deeds constituting a chain of conveyances from said George W. and David Glines to John Palmer, and through him to S. H. Melcher, said Palmer and Melcher respectively holding the title under the conveyances at the several times when their mortgages were executed.

It appeared in evidence that Mudgett, upon taking the lease from the town, entered upon the lot, then wild land, cleared several acres, built a barn upon it, and remained

in the undisturbed possession for several years, claiming it as his, paying rent to the town agreeably to the terms of the lease; that he sold out his interest in the land to Glines, in 1835, for a valuable consideration, delivered to him the lease and yielded the possession to him, subsequently making the assignment on the back of the lease while George W. and David Glines were in possession; that they occupied in like manner until they conveyed to William Gannett by quitclaim deed, dated August 20, 1839, conveying "all the grantors' rights" in the land in question, this being one of the conveyances in the plaintiff's chain of title, and that possession accompanied the title down to December, 1854, when Palmer took his deed, the premises then being all cleared and improved as pasture, tillage or mowing, and with a dwelling-house thereon; that Palmer, on taking his deed, went into possession, built a large dwelling-house, and made extensive improvements, and carried on the business of manufacturing lime from a bed of limestone on the premises, and remained in possession, either solely or in conjunction with S. H. Melcher, until late in the fall or early in the winter of 1856, when he left the premises, said Melcher about the same time removing from town, and that for two or three months prior to February, 1857, the possession was vacant; that Flanders entered and took possession in February, and he and the other defendants under him have been in possession ever since. Hosea S. Baker testified that he was one of the selectmen in 1855 and also in 1857; that for the five years preceding 1856 the rent was not paid to the town until the spring of 1857, when it was paid by Flanders, under the following circumstances: Flanders applied to the witness, Baker, and a Mr. Webster, also one of the selectmen, for the consent of the town to his taking possession of the lot, they, the selectmen, knowing that he had obtained the quitclaim from Mudgett, and understanding that he was about to take possession, or

had taken possession under it; and they, Baker and Webster, consented that he might have possession so far as the town had authority to give it, upon his paying up the rent in arrear. Baker at first testified that Flanders paid the rent in arrear, agreeably to this arrangement, but he afterward stated that he did not remember of his being present when he paid it, and he could not say that he had personal knowledge of its being paid by Flanders, nor how he came to understand that such was the fact. He further testified that in the spring of 1855, and while he was selectman, he asked Hardy if he was aware that he had conveyed the land with warranty when there was rent due upon it; that by asking this he did not intend to dun Hardy for the rent, but merely to remind him that it was unpaid; that he was ready then to receive it, but Hardy did not pay it, and did not say any thing about paying it; that in 1857, while he was selectman, he suggested to Palmer that it was in arrear, and asked if he might not deduct it out of a sum of money due from the town to him, and for which he was about giving him an order on the town treasurer, and that Palmer declined, saying that he had nothing to do about paying it.

Ebenezer Hardy, to whom Gannett conveyed this and other lots by deed, dated in 1848, describing this lot as subject to the lease from the town, and excepting it from the covenants of warranty on that account, and who conveyed to Joseph Hardy, Jr., testified that he paid the rent to the town accruing during the time he occupied, which was from the date of Gannett's deed to him until he conveyed to Joseph Hardy, Jr., by warrantee deed, describing the lot as the same land held by the grantor by deed from Gannett, and referring to that for a more particular description; and said Joseph testified that he paid the rent to the town for the years 1850, 1851, 1852 and 1853, he occupying during those years under his deed from Ebenezer, and both of said deeds being in the line of the plaintiff's

title. There was no other evidence in relation to the paying of rent, or of a demand for payment, or of an entry or other proceedings of the town on account of its nonpayment.

The plaintiff proved by Mudgett that some time before the execution of his deed to Flanders, in a conversation between them in reference to this lot, Flanders said he had been to the records, but did not state what he learned there ; that a few months afterward, Mudgett was at the register's office, and noticed the certificate of the acknowledgment annexed to the assignment of the lease, as purporting to be signed by himself ; and that subsequently he told Flanders that when he gave him the quitclaim he did not know of this mistake in the record in relation to the acknowledgment, and that Flanders replied to this, "I did."

Baker testified that not long before Flanders paid the rent, in the spring of 1857, and subsequently to his talk with Palmer about the rent, Flanders stated to him that Mudgett had the original lease of this lot from the town. The court ruled that this was competent evidence of Flanders' having actual notice of the lease and the assignment at the time of taking the quitclaim from Mudgett. It was admitted that the acknowledgment of the assignment, if any was made before a magistrate authorized to take it, was not taken before any such magistrate bearing or using the name, "John Mudgett."

At the commencement of the trial, the plaintiff in the first instance produced the mortgages and mortgage notes, proved their execution, the sale and transfer of the Palmer mortgage, the possession of Joseph Hardy, Jr., from 1850 to 1854, and the deeds from Hardy to Palmer, and from Palmer to S. H. Melcher, the latter being a warrantee deed, purporting to convey a fee ; and here rested his case. The defendants then proved the possession of Mudgett from 1829 to 1835, his quitclaim to Flanders, and the entry

and subsequent possession of Flanders and of the other defendants under him, down to the date of the writ, which was the 31st of October, 1857 ; and offered to prove that Mudgett, while in possession, claimed to hold under a paper title of some kind ; and this was objected to by the plaintiff, and held to be inadmissible. The plaintiff then introduced the foregoing testimony of Mudgett relative to his giving up the possession to Glines, for the purpose of showing an abandonment of the possession by Mudgett prior to the possession of Hardy ; and further proved by Mudgett that after giving up the possession to Glines, he never had or claimed to have any interest in the land or possession of it ; but nothing was said until a subsequent stage of the trial in reference to his having a lease from the town, or paying rent. The defendants, for the purpose of showing an abandonment of possession by said Palmer and S. H. Melcher, prior to the execution of the quitclaim from Mudgett to Flanders, and of their entry under it, proved that Palmer and Melcher having been in possession prior to the fall of 1856, and then living in Haverhill, removed from that town with their families, leaving the premises vacant for three or four months prior to February, 1857, when Flanders entered, and made no entry or claim to the premises subsequently, down to the commencement of this suit. The court ruled that this was not competent evidence for that purpose, as against the plaintiff claiming under the mortgages from said Palmer and S. H. Melcher. The defendants then proved the lease from the town to Mudgett, as above stated, and the plaintiff proved the assignment to Glines, and introduced the foregoing evidence relative to the knowledge of Flanders that the lease was so given and assigned. There was no evidence of title or right in either of the defendants, except the foregoing ; and there was evidence that the other defendants were in possession as tenants of

Flanders, and claimed no interest or right in the premises, except as tenants under him.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court upon the foregoing case; judgment to be rendered on the verdict, or the verdict set aside and a new trial granted, or judgment rendered for the defendants, as the court may order.

*H. Hibbard* (with whom was *J. S. Bryant*), for the defendants.

The pleadings show the defendants in possession claiming title. That possession is good against the demandant until he shows a better title in himself. *Atherton* v. *Johnson*, 2 N. H. 31; *Wendell* v. *Blanchard*, 2 N. H. 457; Jackson on Real Actions 4; *Lund* v. *Parker*, 3 N. H. 49. To disprove the demandant's seizin, the defendants may show title in a stranger, when the result will be, not merely that a third person has a better title than the demandant, but that the latter has no such seizin as will enable him to maintain the action. Jackson on Real Actions 158; *Bailey* v. *March*, 2 N. H. 522; *Berry* v. *Brown*, 5 N. H. 156; *Bailey* v. *March*, 3 N. H. 274; *Enfield* v. *Permit*, 8 N. H. 512. The plaintiff's estate in the demanded premises, if he has any, is an estate for years by virtue of the lease from the town of Haverhill, through which he claims. This is not such an interest as will enable him to maintain a writ of entry. He is not tenant of the freehold. He has no legal seizin. His possession is permissive. It is that of the town of Haverhill, the lessor. As to him, the town has the freehold and the legal seizin. *Towle* v. *Ayer*, 8 N. H. 59; Co. Litt. 153–181, 330; Jackson on Real Actions 158; *Shaw* v. *Jones*, 9 N. H. 400; 2 Bl. Com. 140–144. A lease for years is a chattel interest, and goes to the executor. *Ex parte Gray*, 5 Mass. 419. It is so in this State. *Brewster* v. *Hall*, 1 N. H. 350. But if the plaintiff's title can be considered to come otherwise

than by the lease, it is merely possessory, could be lost by abandonment, and there was evidence competent to show its loss in that way. Of that character was the evidence that Flanders and Melcher removed from the premises and from the town, with their families, three or four months prior to the defendants' entry, and made no claim afterward until the commencement of the suit. That could be shown by parol. The question of abandonment was one of fact, to be found by the jury. *Wendell* v. *Blanchard*, 2 N. H. 546 ; *Blaisdell* v. *Martin*, 9 N. H. 233; *Jones* v. *Merrimack Lumber Company*, 31 N. H. 381. Proof that the premises were vacant and unoccupied at a time within the period limited for bringing ejectment by the people, is presumptive evidence of title for the people. *Wendell* v. *People*, 8 Wend. 183 ; *People* v. *Denison*, 17 Wend. 312. The defendants do not waive the other grounds of objection to the demandant's title appearing upon the case.

*Felton* (with whom was *E. A. Hibbard*), for the plaintiff.

Palmer, having a warrantee deed from Joseph Hardy, Jr., and possession under it, mortgaged to Hardy—Hardy also having possession at the time of his conveyance to Palmer—and Hardy assigned Palmer's mortgage to the plaintiff. Palmer conveyed to S. H. Melcher, and S. H. Melcher mortgaged to the plaintiff, both by warrantee deeds, all which took place long before the defendants' possession. Prior possession, under color or claim of title, is sufficient to maintain a writ of entry against one having no title. *Gibson* v. *Bailey*, 9 N. H. 168–174. Such possession in a grantor is *evidence of title* in him, and his deed conveys to his grantee his title so evidenced. *Gibson* v. *Bailey ; Jones* v. *Merrimack Lumber Company*, 31 N. H. 384; *Wendell* v. *Blanchard*, 2 N. H. 457 ; *Cobleigh* v. *Young*, 15 N. H. 500. He who enters under a deed which purports to convey to him a fee, is presumed to enter claiming according to his deed, and his possession is seizin.

*Towle* v. *Ayer*, 8 N. H. 59 ; *Lund* v. *Parker*, 3 N. H. 51. And we say that his seizin is not defeated, especially as against a mere stranger, although it afterward appear that he has no valid title except to a term for years, or to a part only of the granted premises. *Gibson* v. *Bailey*. If there was not evidence of a valid lease from the town to Mudgett, then Mudgett had only a naked possession, and his abandonment of that possession was sufficiently proved, and so he had nothing to convey to Flanders, and the plaintiff stands well upon his mortgages, and the prior possession of those under whom he claims. If there was competent and sufficient proof of the lease, the assignment of it was also sufficiently proved, and in that case, also, Mudgett had nothing to convey to Flanders, and the plaintiff stands well upon his mortgages and the same prior possession—Flanders showing no title, he having notice of the assignment. The existence of a lost deed, its execution and contents, may be proved by circumstantial evidence. *Downing* v. *Pickering*, 15 N. H. 344. The lease and assignment were both lost together, and proof of the loss of one is proof of the loss of the other. The tenants cannot under the general issue show a tenancy at will or for years, or any thing less than a freehold ; so that Flanders acquired no right from the town by reason of what was said and done by the selectmen, Baker and Webster, that can avail them in this case. *Sperry* v. *Sperry*, 8 N. H. 477. There was nothing done by the town to perfect a forfeiture on account of the non-payment of rent. There was no legal demand or entry. *Sperry* v. *Sperry*, above cited; *McMurphy* v. *Minot*, 4 N. H. 251; *Conn* v. *Brickett*, 2 N. H. 163 ; 1 Saund. 287, note 16. The abandonment relied on by the tenants was at most an abandonment by the plaintiff's grantors long after the plaintiff's title accrued, and could not affect the plaintiff's rights. Besides, the plaintiff claims as mortgagee, and mortgagees seldom take possession of premises mortgaged

Melcher *v.* Flanders.

to them, and their failure to do so is no evidence of abandonment. The plaintiff followed up his claim by this suit in so short a time as to leave no room to infer an abandonment under any existing circumstances. But there was no abandonment. *Pickard* v. *Bailey*, 26 N. H. 165.

One of the subscribing witnesses to a deed is generally sufficient to prove it. *Russell* v. *Coffin*, 8 Pick. 143, 149; 1 Stark. Ev. 333; 1 Gr. Ev. 569; *Jackson* v. *Sheldon*, 9 Shep. 569; 3 Wilson 38. It is only when the instrument labors under doubt or suspicion, that it becomes necessary to call more than one of the subscribing witnesses. The practice in this State has been in accordance with these authorities.

Mudgett's deed to Flanders, being a mere naked release, without any covenants, conveyed at most a term for years, Mudgett never having had more, and such an estate cannot be given in evidence under the general issue. *Sperry* v. *Sperry*, 8 N. H. 477; 4 Gr. Cr. 78, note.

BELLOWS, J. This is a writ of entry for a lot of land in Haverhill, and the action was tried upon the plea of *nul disseizin*. The demandant claimed by virtue of two mortgages, one by John Palmer to Joseph Hardy, Jr., dated December 15, 1854, and assigned to the demandant September 20, 1856, and the other by S. H. Melcher to the demandant, dated October 20, 1855. It appeared on the trial that Joseph Hardy, Jr., had been in possession of the land for several years next preceding December 11, 1854, but claiming it as tenant for years, and paying rent to the town of Haverhill; and on December 11, 1854, he conveyed the land in fee and with warranty to John Palmer, who thereupon made the mortgage before stated, to secure the payment of the price, and entered upon the land, made valuable improvements upon it, built a large house, and occupied the land either alone or in conjunction with S. H. Melcher until late in the year 1856; that

on the 7th day of March, 1855, the said Palmer convey-
ed the land by deed of that date, in fee and with war-
ranty, to S. H. Melcher, who, on the 20th day of October,
1855, mortgaged the same to the demandant to secure the
payment of a note of $800 made by said S. H. Melcher.

The defence set up was, that the plaintiff's title, if he
had any, was merely an estate for years under a lease from
the town of Haverhill, dated January 26, 1829, to John
Mudgett, for nine hundred and ninety-nine years, and
*that* being but a chattel interest, the demandant could not
maintain a writ of entry ; and the defendants also claimed
that Flanders, one of the defendants, had, before the com-
mencement of the suit, acquired the title of Mudgett under
this lease.

Upon an examination of the case the court is of the
opinion that neither of these grounds of defence can avail
the defendants upon the issue which was tried. The entry
of Palmer under the deed from Hardy, purporting to
grant the fee, is presumed to be according to his title,
until the contrary is shown. *Towle* v. *Ayer*, 8 N. H. 59 ;
*Gage* v. *Gage*, 30 N. H. 420 ; *Tappan* v. *Tappan*, 31 N. H.
41. It would be competent for the defendants to show
that he did in fact enter, claiming a term of years only ;
and proof that he recognized the title of the landlord by
paying rent to the town of Haverhill would be evidence of
such restricted claim. But no such evidence was offered ;
on the contrary, it appeared that no rent was paid by
Palmer or S. H. Melcher, and that both of them exer-
cised acts of ownership over the land inconsistent with a
claim of a tenancy for years. Of these acts, the deed of
Palmer to S. H. Melcher, and the mortgage from S. H.
Melcher to the demandant are examples ; and it is quite
clear, we think, that there was evidence from which the
jury might legally have found that both Palmer and S. H.
Melcher occupied the land, claiming a fee, according to
their paper title. If this be true, then, as the verdict was

Melcher v. Flanders.

by consent for the plaintiff, it stands as if the jury had found an entry and claim, according to their immediate title. The mortgage from Palmer to Hardy, made before Palmer's entry, may, and probably does stand upon a different footing, as Palmer was not *then* in possession claiming a freehold, and as Hardy's possession was that of a mere tenant for years, paying rent to the landlord. But of this it is not material to inquire, because the interest derived from the mortgage of S. H. Melcher to the demandant is sufficient to maintain the action.

But it is said that the defendant, Flanders, derives title from Mudgett, whose possession was earlier than that of Palmer, and he produces a deed from Mudgett to him, of February 21, 1857, by which Mudgett releases to him all his interest in the land, though at the same time claiming none, and receiving nothing for the release; and it appeared that twenty-five years ago Mudgett was in possession of the lot and occupied it for many years, until he sold to George W. and D. Glines, when he yielded to them the possession, and they went into the occupation of it; but it also appeared that when Mudgett entered, and while he was in possession, he claimed under a lease from the town of Haverhill, as before mentioned, for nine hundred and ninety-nine years, and that when he sold to Glines he delivered over and assigned to them the lease; and therefore, as Mudgett claimed only a term of years, it would avail the defendants nothing, as a defence under the plea of *nul disseizin*, to show that Mudgett conveyed his interest to the defendant, Flanders, because, being a tenancy for years, the defendants could avail themselves of it only by a plea of non-tenure special; *Sperry* v. *Sperry*, 8 N. H. 477; *Gibson* v. *Bailey*, 9 N. H. 168, 174; *Mills* v. *Pierce*, 2 N. H. 9; Stearns on Real Actions 202, 232; *Higbee* v. *Rice*, 5 Mass. 302; *Cocheco Manufacturing Co.* v. *Whittier*, 10 N. H. 305; *Hale* v. *Glidden*, 10 N. H. 397; and this renders immaterial the question whether, in case Mudgett

had no title whatever, his possession was lost by abandonment. We are, however, inclined to think that the jury might legally have found for the plaintiff on that point. *Blaisdell* v. *Martin*, 9 N. H. 253.

.With these views, and for the purposes of this case, it is not necessary to determine the question, whether the term of years held by Mudgett had been conveyed by him to persons under whom the plaintiff claims. But we have considered the question, and have arrived at a conclusion which gives the same result. Upon the loss of the lease and assignment being shown, the copies from the registry are admissible, even if the deeds had not been in the demandant's chain of title. The assignment by Mudgett to George W. and David Glines, although not acknowledged, was good and valid between the parties, and as against purchasers, even for a valuable consideration, with notice of the assignment; *Cutting* v. *Pike*, 21 N. H. 347; *Hastings* v. *Cutler*, 24 N. H. 481; and we think that upon the evidence reported the jury might properly have found such notice. The deed, then, conveyed nothing to the defendant, for Mudgett then had nothing to convey; and had it been otherwise it could have availed nothing under the general issue. Nor could it avail anything to show that the demandant's predecessors held and claimed only a term of years, or that his *own* title was actually no greater, any more than to show that he had really no title at all. The only material inquiry was whether Palmer was in possession claiming an estate equal to a freehold at the time he conveyed to S. H. Melcher, and on that point the verdict is conclusive.

It is contended that the seizin of the demandant is rebutted by proving title in the town of Haverhill; but this is allowed only in cases where there is no *actual*, but merely a *constructive* seizin. When the demandant, as in this case, has *actual* seizin, such proof is not admissible. *Enfield* v. *Permit*, 8 N. H. 512; *Hutchins* v. *Carleton*, 19

N. H. 517. If there was any evidence tending to prove an abandonment of the possession under the plaintiff's claim, which, to say the least, is doubtful, it must be taken that the verdict finds against the defendant upon that point; and beside, no act of Palmer or S. H. Melcher, *after* the mortgage to the demandant, could affect him.

The testimony of one of the subscribing witnesses to the mortgage of S. H. Melcher, that he subscribed it as a witness, and saw said Melcher sign, and that the other witness was present and also subscribed it, is sufficient proof of the execution, inasmuch as it proves the signing by Melcher, and that it was witnessed by two witnesses. 1 Stark. Ev. 330; 1 Gr. Ev. 569; *Russell* v. *Coffin,* 18 Pick. 143; *Jackson* v. *Sheldon,* 9 Shep. 569; 3 Wils. 38. There must, therefore, be

*Judgment upon the verdict.*